# Cleveland Division of Police
## Internal Affairs Unit
Investigation Tracking Sheet

IAU Case #: 2014-009

Victim/Complainant(s): State of Ohio

Officer(s) Involved: Sergeant Robert Strollo #9123

Nature of Allegation: Misconduct

| UDFIT: | FATAL: | NON-FATAL: | NO-INJURY: | SUICIDE: |
|---|---|---|---|---|

ACCIDENTAL: _____ IN-CUSTODY: _____

HOMICIDE UNIT #: _____

DATE OVERSIGHT REPORT COMPLETED & DELIVERED TO BSI : _____

DATE REFERRED FOR TACTICAL REVIEW: _____

Location of Incident: 1438 St. Clair (Crazy Horse)     Date: 11/16 2013

Assigned Investigator: Sgt. Hartman     Assigned: 1/31/14

Reviewed by OIC: Monroe Goins, Lt#8498     Date: 2/22/16

OIC's Comments/Recommendations:

On November 16, 2013, Mr. Christian Leonhardt is arrested at the Crazy Horse Gentlemen's Club, 1438 St. Clair, for Domestic Violence and other disorderly behavior [13-369054]. Leonhardt later complains that Sgt. Strollo#9123, who was at the club on an unrelated matter, gave the club's bouncer [Umberto Caniglia] permission and then created conditions for Caniglia to assault him.

On January 31, 2014, Sgt. Hartman of the Internal Affairs Unit is assigned to further investigate. Hartman conducted numerous interviews related to this incident. His investigation revealed conflicting stories by all parties. In addition, Hartman reveals that Leonhardt is currently under investigation with the Cleveland Police Intelligence Unit and the Third District Detective Bureau for threatening Strollo and Caniglia, respectively. Interestingly, however, the focus of this IA investigation, Sgt. Strollo, was previously under a separate investigation, by the Northern Ohio Law Enforcement Task Force [NOLETF]. Their investigation produced transcribed telephone conversations, one of which just happened to be linked to this current incident.

In that November 20, 2013, recorded and transcribed telephone conversation, Sgt. Strollo admits to an associate, Mr. Gilbert Mendez [NOLETF Target], that on the night in question, while at 1438 St. Clair, he allowed



PLAINTIFF'S EXHIBIT
C
ALL-STATE LEGAL®

CITY 1

Caniglia and Leonhardt to be alone to fight. Consequently, Sgt. Hartman recommends that this information be presented to the City of Cleveland Prosecutor's Office for a criminality review.

Hartman's investigation also revealed new information about potential misconduct committed by Strollo in regards to a previously investigated incident, also occurring at the Crazy Horse [see IAU #13-009]. Because the information was not available at the time of the initial investigation, the matter will be handled as a separate, but companion complaint, and related to the initial investigation. All related interviews will be conducted accordingly.

Sgt. Hartman's investigation was fair, thorough, and complete. With the exception of Strollo, all other members of the division actions fell within acceptable guidelines, with reference to rules, regulations, laws, and ordinances. I concur with Hartman's recommendation that Strollo's actions should be presented to the City of Cleveland Prosecutor for a criminality review. That said, I recommend that this case be forwarded through the chain, which will include the prosecutor, for ascending review. After which I recommend that Strollo's actions be reviewed for any administrative violations which may be applicable to this incident.

### Addendum: #1

On April 27, 2015, this investigation was presented to the City and County prosecutor's office. Both declined to pursue criminal charges against Strollo [see felony review]. Consequently, after conducting further investigation, on October 28, 2015, Sgt. Hartman secured an immunized statement from Strollo regarding his actions on November 16, 2013 at the Crazy Horse Night Club. Hartman also discussed the parameters of Strollo's relationship with Gilbert Mendez, who is currently listed as a fugitive from justice.

After obtaining this immunized statement, Hartman challenges the veracity of Strollo's responses throughout the interview. Based on evidence gleaned from his investigatory efforts, Hartman concludes that Strollo not only created conditions for Umberto Caniglia [bouncer of Crazy Horse] to assault Leonhardt, but concludes that Strollo failed to provide timely medical attention for Leonhardt after he was rendered unconscious, failed to accurately report pertinent facts in the Record Management Report (RMS), failed to properly monitor the prisoners activities once he was in Strollo's custody, and failed to document the Use of Less Lethal Force in the RMS.

Due to these various failures, Hartman recommends that this investigation be disposed as "SUBSTANTIATED" for violations of the Division's rules, regulations, policies and procedures. Therefore, because of these violations, Hartman recommends discipline for, but not limited to the violations, outlined in his investigation.

### Addendum: #2 [dtd. 2/24/16]

On 1/15/16, because of the issues regarding the lack of truthfulness contained in Strollo's statements during his IA immunized interview we had the case reviewed again by the City of Cleveland Chief Prosecutor. After review, she ruled no papers issued, due technical challenges articulated in the Garrity admonition. Consequently, she recommended an administrative solution. We asked her look at it again, and on 2/19/16 she reiterated her original position [administrative]. [see 6 specifications in Hartman's investigation]

OIC's Signature:    *Monroe Helm, Lt #3498*

CITY 2

Reviewed by Commander Bureau of Integrity Control: Brian Heffernan, Commander

Comments/Recommendations: I strongly agree with the recommendation for discipline and with closing this case with a disposition of substantiated. I would like to add the following comments in addition to the statements made by Sgt Hartman and Lt Goins.

Sgt Strollo's conduct on this night was entirely inappropriate. What makes it all the more offensive is that if the conversation was not overhead by NOLETF via a Title III, the lack of action by Sgt Strollo would have gone undetected. Furthermore, LEONHARDT would have been prosecuted on Strollo's report.

I would also recommend charges against P.O Michael Janusczak #1967 and PO Stephan Williams #1042 for failure to render first aid to and failure to contact EMS for LEONHARDT as he lay there handcuffed.

Specification 1. Officers Janusczak #1967 and Williams #1042 failed to provide first aid to CHRISTIAN LEONHARDT after observing LEONHART unconscious and handcuffed.

Specification 2. Officers Janusczak #1967 and Williams #1042 did not request EMS for an unconscious, handcuffed male (LEONHARDT).

Specification 3. Officers Janusczak #1967 and Williams #1042 did not act responsibly as policy dictates after observing a use of force that was unreasonable.

The three (3) additional specifications for Officers Janusczak #1967 and Williams #1042 are in violation of the following directives:

**Manual of Rules:**

**II. ADMINISTRATIVE COMPLIANCE**
2.01 Personnel shall not violate any law of the United States, the State of Ohio, Charter provision or ordinance of the City of Cleveland, or neglect to perform any duty required by law, nor shall they engage in any conduct that would constitute a crime under the laws of the United States, the State of Ohio, or the Charter provisions or ordinances of the City of Cleveland.
2.02 Personnel shall not willfully disobey any rules, General Police Orders or directives of the Division of Police, or any lawful orders, written or oral, issued to them by a superior officer of the Division of Police.
2.03 Personnel shall perform all duties required by rules, General Police Orders, directives, or orders of the Division of Police.

**IV. DUTY**
4.12 Personnel shall be considered to be on duty at all times for purposes of discipline.
4.13 Personnel shall furnish their name, rank, and badge number to any person who may request it.
4.14 Personnel shall give assistance to injured and sick persons and obtain proper transportation to the nearest hospital.

General Police Order:

Use of Force

**PROCEDURES:**

CITY 3

I.   *Members who are present at the scene of a police-involved use of force are not relieved of the obligation to ensure that the use of force complies with the requirements of the law; and, in the instance of a Cleveland police officer, adherence to Divisional rules, policy, and training. Members of the Division of Police have a duty to act if the use of force against a person by any law enforcement officer clearly becomes excessive or objectively unreasonable.*

Commander's Signature: _____ 2/25/16

Date Sent to Chief for Review: _2/25/16_     Delivered By: _6/18_

Received by Signature: _6118_ _____ Audrey Forent 9839 2-25-16

Chief's Executive Assistant's Comments/Recommendations: _Concur w/ recommendation of_

_discipline Jw oc. 3-22-16_

Chief's Orders:     File - No Further Action: _____     Referred to Prosecutor: _____

                    Directed to Grand Jury: _____     Administrative Charges Only: _✗_

Chief's Directions: _CONCUR W/ CHARGES_

Chief's Signature: _____ CHIEF     Date: _3-23-16_

Received at the Prosecutor's Office:                    Date:

Page 4 of 5

CITY 4

Delivered to Prosecutor's Office By: _____ Date: _____

Prosecutor's Ruling: _____

Prosecutor's Signature: _____ Date: _____

Date Sent To Grand Jury: _____ Date Presented: _____

Date of True Bill: _____ Date of No Bill: _____

Log of Hearings/Court Appearances – Date – Location – Disposition – Name of IAU Member Attending:

_____

_____

_____

_____

_____

_____

_____

**Final Disposition:** _____ Date: _____

OIC's Signature: _____ Badge # _____ Date: _____

CITY 5

# Cleveland Division of Police
## Internal Affairs Unit
Investigation Tracking Sheet

IAU Case #: 2014-009

Victim/Complainant(s): State of Ohio

Officer(s) Involved: Sergeant Robert Strollo #9123

Nature of Allegation: Misconduct

UDFIT:_____ FATAL:_____ NON-FATAL:_____ NO-INJURY:_____ SUICIDE:_____

ACCIDENTAL:_____ IN-CUSTODY:_____

HOMICIDE UNIT #: _____

DATE OVERSIGHT REPORT COMPLETED & DELIVERED TO BSI :_____

DATE REFERRED FOR TACTICAL REVIEW:_____

Location of Incident: 1438 St. Clair (Crazy Horse)  Date:  11/16 2013

Assigned Investigator: Sgt. Hartman  Assigned: 1/31/14

Reviewed by OIC: _____ Monue glcoy Lt #5478  Date: 12/1/14

OIC's Comments/Recommendations:

OIC's Signature:

Page 1 of 3

CITY 7

# Cleveland Division of Police
## Internal Affairs Unit
Investigation Tracking Sheet

IAU Case #: 2014-009

Victim/Complainant(s): State of Ohio

Officer(s) Involved: Sergeant Robert Strollo #9123

Nature of Allegation: Misconduct

| | | | | |
|---|---|---|---|---|
| UDFIT: | FATAL: | NON-FATAL: | NO-INJURY: | SUICIDE: |

ACCIDENTAL: _____ IN-CUSTODY: _____

HOMICIDE UNIT #: _____

DATE OVERSIGHT REPORT COMPLETED & DELIVERED TO BSI : _____

DATE REFERRED FOR TACTICAL REVIEW: _____

Location of Incident: 1438 St. Clair (Crazy Horse)     Date: 11/16 2013

Assigned Investigator: Sgt. Hartman     Assigned: 1/31/14

Reviewed by OIC: Monroe Goins, Lt#8498     Date: 12/1/14

OIC's Comments/Recommendations:

On November 16, 2013, Mr. Christian Leonhardt is arrested at the Crazy Horse Gentlemen's Club, 1438 St. Clair, for Domestic Violence and other disorderly behavior [13-369054].

On January 31, 2014, Sgt. Hartman of the Internal Affairs Unit is assigned to further investigate. Hartman conducted numerous interviews related to this incident. His investigation revealed conflicting stories by all parties. In addition, Hartman reveals that Leonhardt is currently under investigation with the Cleveland Police Intelligence Unit and the Third District Detective Bureau for threatening Strollo and Caniglia, respectively.

Interestingly, however, the activity leading to this IA investigation with Sgt. Strollo was brought to the attention of IA by the Northern Ohio Law Enforcement Task Force [NOLETF]. Their investigation produced transcribed telephone conversations, one of which is pertinent to this investigation.

In that November 20, 2013, recorded and transcribed telephone conversation, Sgt. Strollo admits to an associate, Mr. Gilbert Mendez [ convicted drug trafficker and NOLETF Target], that on the night in question, while at 1438 St. Clair, he allowed Caniglia and Leonhardt to be alone to fight. Consequently, Sgt. Hartman recommends that this information be presented to the City of Cleveland Prosecutor's Office for a criminality review.

Page 1 of 3

CITY 8

Hartman's investigation also revealed new information about potential misconduct committed by Strollo in regards to a previously investigated incident, also occurring at the Crazy Horse [see IAU #13-009]. Because the information was not available at the time of the initial investigation, the matter will be handled as a separate, but companion complaint, and related to the initial investigation. All related interviews will be conducted accordingly.

Sgt. Hartman's investigation was fair, thorough, and complete. With the exception of Strollo, all other members of the division actions fell within acceptable guidelines, with reference to rules, regulations, laws, and ordinances. I concur with Hartman's recommendation that Strollo's actions should be presented to the City of Cleveland Prosecutor for a criminality review. That said, I recommend that this case be forwarded through the chain, which will include the prosecutor, for ascending review. After which I recommend that Strollo's actions be reviewed for any administrative violations which may be applicable to this incident.

OIC's Signature: _Manuel Ocana, Lt #8498   12/2/14_

Reviewed by Commander Bureau of Integrity Control: _Brian Heffernan, Commander_

Comments/Recommendations: Also of note is that upon receiving the information from NOLETF and later verifiing through investigation Internal Affairs caused the charges against LEONHARDT to be dropped in Municipal Court.

Recommendation in this case is that the file is reviewed by the Municipal Prosecutor for criminal conduct by Sgt Strollo. The recommendation is based on acts of commission by STROLLO as well as acts of omission: The RMS report completed for the arrest of LEONHARDT is not accurate: SGT STROLLO does not summons EMS or any other medical help for LEONAHRDT once he is knocked out through a submission choke by CANIGLIA, and the handcuffing of LEONHARDT while unconscious.

I also will recommend that administrative charges are considered for PO Januscak and PO Stephan Williams as both officers saw LEONHARDT unconscious and neither requested or suggested EMS.

BIC OIC's Signature: _R(M  6118_     _12/2/14_

Date Sent to Chief for Review: _12/2/14_     Delivered By: _6118_

Received by Signature: _Anthony Jacek 9839  12.2.14_

Chief's Executive Assistant's Comments/Recommendations: _Refer to Prosecutor for possible charges ~per DC_

CITY 9

Chief's Orders:     File - No Further Action: _____     Referred to Prosecutor: _____

Directed to Grand Jury: _____     Administrative Charges Only: _____

Chief's Directions: CONCUR W/ CHARGES FOR SGT. STROLLO, FORWARD TO DIRECTOR

Chief's Signature: _____ D. WM (CHIEF_____     Date: 3-23-16

Received at the Prosecutor's Office: _____     Date: _____

Delivered to Prosecutor's Office By: _____     Date: _____

Prosecutor's Ruling: _____

Prosecutor's Signature: _____     Date: _____

Date Sent To Grand Jury: _____     Date Presented: _____

Date of True Bill: _____     Date of No Bill: _____

Log of Hearings/Court Appearances – Date – Location – Disposition – Name of IAU Member Attending:

**Final Disposition:** _____     Date: _____

OIC's Signature: _____     Badge # _____     Date: _____

CITY 10

## FELONY-REVIEW  JRM

City of Cleveland
Department of Law
Criminal Division

The City of Cleveland Criminal Division has reviewed the following case and disposes of it as
follows:

Suspect's name: SGT. ROBERT STROLLC

Detective: SGT. HARTMAN Badge #: 9043

Disposition:

_____ Papers Issued:

_____

_____

_____

✓ Referred to Grand Jury

No Papers Issued

Reason(s);

_____ Insufficient evidence

_____ Victim not located/unwilling to cooperate

Steps taken to locate/reach victim:

_____

_____

_____

_____ Held in abeyance for _____

_____                    1/15/16
Reviewing Prosecutor                              Date

White-Cleveland Division of Police File                    Copy - Chief Prosecutor

C of C 17-562 Rev 12/2006

IAU 14-009

# FELONY-REVIEW FORM

### City of Cleveland
### Department of Law
### Criminal Division

The City of Cleveland Criminal Division has reviewed the following case and disposes of it as follows:

Suspect's name: _Sgt Robert Strollo #9123_

Detective: _Sgt Hart_ _____ Badge #: _____

Disposition:

_____ **Papers Issued:**

_____

_____

_____

_____ **Referred to Grand Jury**

**No Papers Issued**

**Reason(s);**

_____ Insufficient evidence

_____ Victim not located/unwilling to cooperate

Steps taken to locate/reach victim:

_This matter was referred to the City_
_of Pros Office and they declined_
_prosecution. Per CCPO Asst Prosecutor_
_Sacci._

_____ Held in abeyance for _____

_____          _4/27/15_
**Reviewing Prosecutor**                          **Date**

# Internal Affairs Unit
## Investigative Report

File: IAU 2014-009         Date: December 01, 2015

Examined By: _Monroe Hems, Lt Gins_   Date: _12/14/15_

From: Carl Hartman, Sergeant       To: Monroe Goins, Lieutenant

Subject: Investigation of Alleged Police Misconduct

Sir:

On Wednesday, October 28, 2015, I had the opportunity to interview Sgt. Robert Strollo in connection with his involvement with both the Christian Leonhardt arrest and with Gilbert Mendez. This interview was conducted under the auspices of Garrity v. New Jersey. Strollo was advised accordingly that his responses to any questions must be truthful and complete. Strollo acknowledged this admonition along with Fraternal Order of Police, Lodge #8, Vice President, Jerold Zarlenga, by signing the Garrity document provided (attached).

Strollo was questioned about his recollection of the incident that occurred at the Crazy Horse on November 16, 2013 as well as his involvement with the subject of the NOLEFT investigation that exposed this incident, Gilbert Mendez. In most instances, Strollo's answers were at the most, very vague, frequently false, or blatantly untrue, despite the warnings given in the Garrity admonition. Strollo's interview, in its entirety, was video/audio recorded and accompanies this case file. A breakdown of the responses Strollo gave can be found in my hand written notes which are also attached to this case file.

Due to the fact that both the Cleveland Municipal Prosecutor's Office and the Cuyahoga County Prosecutor's Office declined prosecution, I recommend this case move forward for consideration of Departmental Charges citing the following specifications / violations:

**Specification 1:** Sgt. Robert Strollo #9123 allowed an assault to be committed (to wit: Christian Leonhardt assaulted by Umberto "Pete" Caniglia) at the Crazy Horse Night Club on November 16, 2013 due to the victim of the assault being verbally abusive toward bar staff and Sgt. Strollo.

**Specification 2:** Sgt. Robert Strollo #9123 failed to provide medical aid to Christian Leonhardt after Leonhardt was rendered unconscious by means of stopping the blood flow to his brain (LVNR).

**Specification 3:** Per his own admission, Sgt. Robert Strollo #9123 engaged in off-duty employment at the Martini 6 Bar located at 1296 W. 6th Street, Cleveland, Ohio. Strollo had no prior authorization for off-duty employment at this location as verified through the Personnel Unit.

**Specification 4:** Sgt. Robert Strollo #9123 falsified RMS report #13-369054 by omission of the original assault on Christian Leonhardt and his being rendered unconscious. The report also falsely reported that P.O. Michael Januszczak assisted in the investigation and arrest of Christian Leonhardt.

**Specification 5:** Sgt. Robert Strollo #9123 failed to properly monitor and provide security to a prisoner after the prisoner was placed in the rear of the zone car by leaving the area where the zone car was located.

**Specification 6:** Sgt. Robert Strollo #9123 failed to complete a "Use of Less Lethal Force" report after Christian Leonhardt was "wrestled to the ground" and handcuffed as stated in the RMS report.

1

CITY 14

# Internal Affairs Unit
## Investigative Report

| | |
|---|---|
| File: IAU 2014-009 | Date: December 01, 2015 |
| Examined By: _Monroe Goins Lt Hruby_ Date: 12/14/15 | |
| From: Carl Hartman, Sergeant | To: Monroe Goins, Lieutenant |
| Subject: Investigation of Alleged Police Misconduct | |

The above enumerated **Specifications** are in violation of the following directives:

## Manual of Rules:

**2.01** Personnel shall not violate any law of the United States, the State of Ohio, Charter provision or ordinance of the City of Cleveland, or neglect to perform any duty required by law, nor shall they engage in any conduct that would constitute a crime under the laws of the United States, the State of Ohio, or the Charter provisions or ordinances of the City of Cleveland.

**2.02** Personnel shall not willfully disobey any rules, General Police Orders or directives of the Division of Police, or any lawful orders, written or oral, issued to them by a superior officer of the Division of Police.

**2.03** Personnel shall perform all duties required by rules, General Police Orders, directives, or orders of the Division of Police.

**2.04** Personnel shall study all rules, General Police Orders and directives pertaining to their duties, and shall be held accountable for any action contrary to these instructions.

**2.14** The following are additional grounds for disciplining personnel, including removal, in addition to the grounds stated in Civil Service Commission rule 9.10:
   a. Incompetence
   b. Gross neglect of duty
   c. Gross immorality
   d. Habitual drunkenness
   e. Failure to obey orders given by proper authority
   f. Any other reasonable and just cause

**3.12** Personnel shall be truthful and unbiased in all written reports, verbal reports, court testimony and conversations affecting the Division of Police, its officers and employees or persons under its jurisdiction.

**4.01** Officers shall protect life and property, prevent crimes, detect, arrest and prosecute offenders, preserve the public peace and enforce laws and ordinances within the scope of their job classifications and in accordance to law.

**4.03** Personnel shall give full attention to the performance of their duties.

**4.06** Personnel shall patrol the territory, handle the investigative tasks, or handle the administrative tasks as required by their post or assignment.

**4.14** Personnel shall give assistance to injured and sick persons and obtain proper transportation to the nearest hospital.

2

CITY 15

# Internal Affairs Unit

## Investigative Report

| | |
|---|---|
| File: IAU 2014-009 | Date: December 01, 2015 |
| Examined By: Monroe Goins [illegible] Date: 12/14/15 | |
| From: Carl Hartman, Sergeant | To: Monroe Goins, Lieutenant |
| Subject: Investigation of Alleged Police Misconduct | |

5.01 Personnel shall not engage in any conduct, speech or acts while on duty or off duty that would reasonably tend to diminish the esteem of the Division of Police or its personnel in the eyes of the public.

5.08 Personnel shall conduct themselves in such a manner as to command the respect of the public.

8.08 In the event that a prisoner becomes ill, injured or dies in jail or custody, the personnel responsible for the prisoner shall notify their superior officer. That superior officer shall ensure that notifications are made and a complete investigation of the incident is conducted in accordance with Divisional procedures.

### General Police Orders:

1.1.03 Standards of Conduct and Courtesy
1.1.02 Values Mission Statement
1.1.25 Secondary Employment
1.3.33 Duty to Avoid the Appearance of Impropriety
2.1.01 Use of Force
7.1.05 Prisoner Supervision and Restraints

### Civil Service Rules:

9.10 Tenure - But any officer or employee in the classified service may be discharged, suspended, or reduced in rank for any one or more of the following causes:

    1. Neglect of duty
    3. Incompetence or inefficiency in performance of duties.
    5. Conduct unbecoming an employee in the public service
    7. Disorderly, immoral, or unethical conduct while on duty.
    10. Willful violation of any of the provisions of law governing the Civil Service
    of the City or of the rules or regulations of the Commission.
    18. For other failure of good behavior which is detrimental to the service, or for
    any other act of misfeasance, malfeasance, or nonfeasance in office.

### Conclusion / Recommendation:

I respectfully recommend disciplinary action is imposed against Sergeant Robert Strollo #9123 due to the enumerated policy violations.

Respectfully,

_____
Sgt. Carl Hartman #9043

3

CITY 16

# Internal Affairs Unit
## Investigative Report

| | |
|---|---|
| File:   IAU 2014-009 | Date:  May 11, 2015 |
| Examined By:  Monroe Goins Lt Hmgr  Date: 12/14/15 | |
| From:  Carl Hartman, Sergeant | To:  Monroe Goins, Lieutenant |
| Subject:   Investigation of Alleged Police Misconduct | |

Sir:

On Monday, April 27, 2015, the facts in this case were presented to Chief Municipal Prosecutor Victor Perez for review and determination of possible criminal charges.  After careful consideration of all information presented, Prosecutor Perez ruled as follows:

## "No Papers Issued"
**(The matter was referred to the Cuyahoga County Prosecutor's Office and they declined prosecution per CCPO Assistant Prosecutor Souci)**

Respectfully,

Sgt. Carl Hartman #9043

1

# Internal Affairs Unit
## Investigative Report

| | |
|---|---|
| File:   IAU 2014-009 | Date:  November 15, 2014 |
| Examined By:  _R(Kll  Cmd_ | Date:  _12/2/14_ |
| From:  Carl Hartman, Sergeant | To:  Monroe Goins, Lieutenant |
| Subject:   Investigation of Alleged Police Misconduct | |

Sir:

On Friday, January 31, 2014, I was assigned IAU case #2014-009 to investigate as a complaint of misconduct by a member of the Division of Police against a citizen. Following are the results of my investigation.

### Occurrence:

On November 16, 2013, Christian Leonhardt entered the Crazy Horse Gentleman's Club located at 1438 St. Clair Avenue to talk to the mother of his child. Leonhardt claims that he was immediately escorted out of the club by the manager and Cleveland Police Sergeant Robert Strollo. After being escorted out, Leonhardt claims that, at the direction of Sergeant Strollo, the manager physically assaulted him.

### Police Officer Involved:

Sergeant Robert Strollo #9123
Assignment: Downtown Services Unit
Date of Appointment: 9/28/1998

### Complainant:

Christian Leonhardt  W/M/37
DOB: 10/26/1976
SSN: xxx-xx-9258
8306 Whitewood Rd.
Brecksville, Ohio 44141

### Interviews:

#### Christian Leonhardt
On March 5, 2014, Christian Leonhardt was interviewed in the IAU office. He was accompanied by his attorney, Hector Martinez. A video/audio recorded interview was conducted. Following are the main points of this interview:
  1. On November 16, 2013, Leonhardt went to the Crazy Horse to talk to his child's mother (Monica DeLagarza) who he was in the middle of a custody battle with.
  2. As Leonhardt walked into the club, he saw Monica sitting with another male. He immediately called her a "fucking whore" and walked directly to the bar.

1

CITY 18

## Internal Affairs Unit
### Investigative Report

| | |
|---|---|
| File:   IAU 2014-009 | Date:  November 15, 2014 |
| Examined By:  *RiWL LL* | Date:  *| 2 / z / | 4* |
| From:  Carl Hartman, Sergeant | To:  Monroe Goins, Lieutenant |
| Subject:   Investigation of Alleged Police Misconduct | |

3. Monica got up and ran directly to a police officer who was inside the club (Sgt. Strollo).
4. Sgt. Strollo and the manager of the club, Pete (Umberto Caniglia), walked over to Leonhardt and told him he had to leave the club.  Pete then "snatched up" Leonhardt and began escorting him out toward the front door of the club.  Sgt. Strollo was following behind.
5. Leonhardt made comments to Pete like "You're a real tough guy with a Sergeant standing behind you!"
6. When they reached the entrance, Sgt. Strollo asked Pete and Leonhardt if they wanted to go outside and fight.
7. Sgt. Strollo told Leonhardt to leave and that no one was going to jail.
8. Once they reached the front door, Leonhardt claims he was shoved from behind causing him to stumble forward and fall to the ground.
9. While he was on the ground, Leonhardt claims he was kicked in the face by Pete and put into a choke hold.
10. While he was being choked, Leonhardt bit Pete on top of the head.
11. Leonhardt then remembers only waking up in handcuffs and being placed into the rear of a police car.
12. Leonhardt claims that Monica saw him on the ground unconscious.
13. Leonhardt stated that he never got the chance to throw a punch.
14. Leonhardt never met Sgt. Strollo before but knew Pete from other clubs.
15. Leonhardt claims that at no point did he resist leaving the club.

\*\*\* Leonhardt claimed in his interview that he had information regarding a separate incident that had occurred at the Crazy Horse months before this incident.  He stated that the "house mother" Melinda Morrow, in some way, had information about how Sgt. Strollo was covering up a shooting that had occurred at the Crazy Horse.  This is an incident that was investigated through the IAU office and assigned case number IAU 2013-009.  This information given by Leonhardt will be investigated as a separate matter.

Umberto "Pete" Caniglia (Manager/Bouncer at Crazy Horse)
On Friday, May 16, 2014 at 1100 hours, Umberto Caniglia was interviewed at the Crazy Horse Gentlemen's Club (1438 St. Clair Avenue).  An audio recorded interview was conducted.  Following are the main points of this interview:
1. Caniglia escorted Leonhardt out the front door of the club.  He positioned Leonhardt directly in front of the surveillance camera to capture the encounter on video.  Leonhardt began threatening Caniglia once he was outside.  Caniglia turned and asked Sgt. Strollo to return into the club and get the off duty Cleveland police officer to assist him.  When he turned, Leonhardt sucker punched Caniglia in the side of the face.
2. Caniglia then grabbed Leonhardt and pinned him against the wall and told him to stop.
3. Leonhardt then bit Caniglia on top of the head.
4. Caniglia shoved Leonhardt away and Leonhardt came back toward him.
5. Caniglia hit Leonhardt thinking this would stop him but Leonhardt came back again.

2

CITY 19

| **Internal Affairs Unit** |
|---|
| **Investigative Report** |

| File:   IAU 2014-009 | Date:  November 15, 2014 |
|---|---|
| Examined By: | Date: |
| From:  Carl Hartman, Sergeant | To:  Monroe Goins, Lieutenant |
| Subject:   Investigation of Alleged Police Misconduct | |

6. Caniglia then placed Leonhardt in what he called a "Monkey Roll."
7. Caniglia stated that he has trained in mixed martial arts (MMA) fighting for twenty years.
8. Caniglia had Leonhardt on the ground sitting on him.
9. Caniglia believed that the fight was caught on video.
10. Two off duty officers came across the street from the club Vada. Sgt. Strollo and the off duty came out of the Crazy Horse at the same time.
11. Caniglia told the officers to handcuff Leonhardt. When he got off, Leonhardt was "sleeping."
12. Immediately after handcuffing Leonhardt, the off duty officers from Vada ran back across St. Clair due to a shooting in the parking lot.
13. The officers that transported Leonhardt showed up right after the shooting across the street.
14. Caniglia stated that Sgt. Strollo was in the club on the night of the incident because he was investigating another matter involving the dayshift manager of the Crazy Horse.
15. Caniglia described how he was walking down the stairs from the office of the Crazy Horse with Sgt. Strollo when Monica came running past them screaming "Oh my God! Chris is here! He said he is going to beat my ass!"
16. Caniglia approached Leonhardt at the bar and told him that he could not be in the club.
17. Leonhardt responded "Fuck you! I'm not going anywhere!"
18. Caniglia told Sgt. Strollo "He's going, we have to get him out of here."
19. Leonhardt stated "Fuck you! You aint nobody without the cops!"
20. When they got Leonhardt to the front door, he was silent.
21. The off duty police officer was coming in the door as they were walking Leonhardt out.
22. Caniglia stated that Sgt. Strollo never told him he could assault Leonhardt
23. Caniglia stated that he attempted to review the surveillance video with the off-duty officer working for him but then realized that the video machine was not functional.

P.O. Steven Beckner #909 (Hauled Leonhardt to CPU)
On April 7, 20144, P.O. Beckner was interviewed in the IAU office. He was accompanied by CPPA President Jeff Follmer as representation. A video/audio recorded interview was conducted. Following are the main points of this interview:

1. On 11-16-2013, P.O. Beckner and his partner received a radio assignment to respond to the Crazy Horse to assist Sgt. Strollo with an arrest.
2. Upon arriving on scene, the prisoner (Christian Leonhardt) was in the back seat of Sgt. Strollo's car.
3. While removing Leonhardt from Sgt. Strollo's car, he was "mother fucking" officers "left and right."
4. Leonhardt was extremely intoxicated.
5. Leonhardt stated to Beckner that he was going to "stick his dick down Beckner's wifes throat."
6. Beckner observed the injuries sustained by "Pete" (Umberto Caniglia). He saw a swollen eye and a bite mark on Caniglia's head.
7. While on scene, Beckner conferred with both Sgt. Strollo and Caniglia.

3

| Internal Affairs Unit |
| --- |
| **Investigative Report** |

| File:   IAU 2014-009 | Date:  November 15, 2014 |
| --- | --- |
| Examined By:  _R. Lutt (~dr_ | Date:  _12/2/14_ |
| From:  Carl Hartman, Sergeant | To:  Monroe Goins, Lieutenant |
| Subject:  Investigation of Alleged Police Misconduct | |

8. Beckner asked Caniglia if there was any video surveillance of the incident that he could put into evidence. Caniglia was unable to provide video.
9. Once the officers arrived at the CPU with Leonhardt, he began complaining of faintness due to being choked out earlier.
10. Leonhardt was then conveyed to St. Vincent Charity Hospital where he was treated and released.
11. The entire time Beckner and his partner had Leonhardt in their custody, he acted belligerently and was verbally abusive.

**P.O. Michael Janusczak #1967** (Working off-duty at Crazy Horse)
On May 29, 20144, P.O. Janusczak was interviewed in the IAU office. He was accompanied by CPPA President Jeff Follmer as representation. A video/audio recorded interview was conducted. Following are the main points of this interview:

1. Worked authorized secondary employment at Crazy Horse for approximately 4 months
2. Answers to Umberto "Pete" Caniglia
3. Duties are outside of the club, specifically the parking lot
4. On the day of the Leonhardt incident, Janusczak was working outside
5. Entered the club to use the restroom passing Sgt. Strollo
6. Caniglia and a "door guy" were escorting a male out of the club
7. Upon exiting the club from the restroom, the male was already in handcuffs and on the ground
8. Before an explanation of what was going on was offered, shots were fired across the street (St. Clair)
9. Janusczak and other off duties from surrounding clubs ran to the parking lot where shooting occurred
10. Upon returning to the Crazy Horse, Leonhardt was already in the rear of the zone car
11. Leonhardt was swearing at anyone that came near the zone car
12. When Leonhardt was originally being escorted out, Strollo was outside the club
13. Janusczak did not witness any altercation or fight between Leonhardt and the others
14. When Janusczak was exiting the restroom, Strollo had come into the club and motioned for Janusczak to come outside due to a fight (handled by the time he got outside)
15. When asked "Who handcuffed Leonhardt?", Janusczak responded, "The manager carries handcuffs."
16. Janusczak did not speak to any victims or witnesses in relation to the arrest of Leonhardt
17. Strollo never directed Janusczak to conduct any type of investigation or interview
18. When Janusczak exited the club from the restroom, Leonhardt was on the ground, unconscious
19. Janusczak never reviewed any surveillance video of the incident with anyone, nor was he asked to by Caniglia or Strollo

**P.O. Stephan Williams #1042** (Working off duty at Vada Night Club)
On November 10, 2014, P.O. Williams was interviewed in the IAU office. A video/audio recorded interview was conducted. Following are the main points of this interview:

CITY 21

# Internal Affairs Unit
## Investigative Report

| | |
|---|---|
| File:  IAU 2014-009 | Date:  November 15, 2014 |
| Examined By:  R\.kl\. C\.L\. | Date:  12/2/14 |
| From:  Carl Hartman, Sergeant | To:  Monroe Goins, Lieutenant |
| Subject:  Investigation of Alleged Police Misconduct | |

1. P.O. Williams was working approved secondary employment across the street from the Crazy Horse.
2. Williams was outside the Vada Night Club when he looked across the street and saw Sgt. Strollo outside the Crazy Horse with a male on the ground.
3. Williams walked across the street to assist Strollo.
4. Upon his arrival at the Crazy Horse, Williams noticed a bald headed bouncer over the male on the ground.
5. The bouncer told Williams that he had put the male "to sleep."
6. The male on the ground was handcuffed and snoring.
7. P.O. Williams did not observe the original fight between the bouncer and the male on the ground.
8. Once he saw that the situation was under control, Williams went back across the street. He was unsure if there was a shooting across the street in the Vada parking lot on the same night or a different night.
9. Williams stated that he was not at the Crazy Horse for any more than 5 minutes.

**Monica Delagarza** – Delagarza refused to cooperate with this investigation. She failed to respond to numerous attempts to contact her including certified letter, voice mail, and personal visit. Currently she is back together with Christian Leonhardt.

## Investigation:

This investigation was initiated after the completion of a separate investigation conducted by the Northern Ohio Law Enforcement Task Force (NOLETF). During the NOLETF investigation, numerous phone calls from/to a specific target were recorded and ultimately transcribed. The calls from/to the target involved active duty Cleveland police officers. All of the available transcripts were forwarded to the Internal Affairs Office for review.

The records were reviewed for any CPD member's possible involvement in illegal activities or Division rule violations. Only one record involving a CPD member was determined to have questionable content. The member is Sgt. Robert Strollo #9123 of the 3rd District Downtown Services Unit. Strollo had a personal relationship with the target of the NOLETF and frequently communicated with him either by phone call or text. A phone call between the two was recorded on November 20, 2013 and lasted for a total of five minutes and twelve seconds. In the phone call Strollo is talking with a Gilbert Mendez (NOLETF target) about an incident that occurred at the Crazy Horse some time before the conversation. Strollo explained to Mendez how a male entered the club and began harassing one of the dancers. The male, Christian Leonhardt, is the father of the child shared with the dancer he is harassing. Strollo went on to explain that he and the bar manager, Pete, escorted Leonhardt to the door. Leonhardt was "running his mouth" so Strollo asked Pete "You want me to go inside for a sec?" "Pete," who is Umberto Caniglia, is a practiced martial artist who also fights in mixed martial arts tournaments. Pete is the manager of the Crazy Horse and also acts as the bouncer. Strollo stated that he went back into the club leaving Leonhardt

5

# Internal Affairs Unit
## Investigative Report

| | |
|---|---|
| File:   IAU 2014-009 | Date:  November 15, 2014 |
| Examined By: | Date: |
| From:  Carl Hartman, Sergeant | To:  Monroe Goins, Lieutenant |
| Subject:   Investigation of Alleged Police Misconduct | |

and Pete to fight. He returned when he heard "scuffling" outside. Leonhardt was pinned against the wall by Pete. Leonhardt bit Pete on top of the head. According to Strollo, Pete then "puts him night night in a sleeper hold and knocks him out." There is no mention of Strollo's involvement afterward other than doing the assault report for Pete.

Several interviews were conducted during this investigation and are detailed preceding this narrative. Caniglia and Leonhardt both gave similar statements regarding the chain of events except skewed to fit their own agendas respectively. Caniglia indicated that he told Strollo to go back into the bar to get the off duty to assist in arresting Leonhardt. He further added that Strollo never purposely walked away so Caniglia could have the opportunity to assault Leonhardt, nor did Strollo suggest it. Leonhardt, in his statement, stated that Strollo asked Caniglia if he wanted to go outside with Leonhardt to fight. This is more similar to how Strollo described it in his conversation with Gilbert Mendez. Leonhardt admits that he was at the Crazy Horse to see Monica Delagarza and when he entered the club he saw her with another male performing a lap dance. He admitted that he confronted her briefly but then went to the bar to get a drink. He went on to admit that when he was being escorted out, he was assaulted by Caniglia and held against the wall so he bit Caniglia on top of the head in self-defense. Leonhardt stated that he never resisted leaving the club.

Several off-duty Cleveland Police officers were involved, in varying capacities, with this incident. Patrol Officer Mike Januszczak was working approved secondary employment at the Crazy Horse. According to his statement, Januszczak was not involved in any capacity with the confrontation or eventual arrest of Leonhardt. Januszczak was working outside of the club in the area of the parking lot. He entered the club to use the restroom. On his way in, he passed Sgt. Strollo in the doorway. He also passed Caniglia and a "door guy" who were escorting a male out of the bar (Leonhardt). When he finished in the restroom, Januszczak started walking out. Sgt. Strollo motioned for him to hurry outside due to a fight. When Januszczak made it out into the parking area, Leonhardt was on the ground and already handcuffed. Before he could question what happened, shots were fired in a parking lot across St. Clair Avenue. He immediately turned his attention to that and ran across the street. Patrol Officer Stephan Williams was working approved secondary employment at the Vada Night Club. In his statement, Williams looked across the street from Vada and saw Sgt. Strollo standing near a male on the ground. Williams went over to the Crazy Horse to assist if necessary. When he arrived, the male on the ground (Leonhardt) was lying on the ground asleep and snoring. Caniglia bragged to Williams that he had put Leonhardt "to sleep." Williams stated that he was not at the Crazy Horse for any more than five minutes. No words were exchanged with Sgt. Strollo. Seeing that the situation was under control, Williams went back across the street. Williams did not witness any of the precipitating events.

Once Leonhardt was arrested he was immediately placed into the rear of Sgt. Strollo's zone car. Sgt. Strollo requested the assistance of another zone car to haul Leonhardt to the Central Prison Unit (CPU). Patrol Officers Beckner #909 and Beckman #2550 were working DSU Car #9624 and responded. Upon their arrival, the incident was over and Leonhardt was already secured in the zone car. While transferring him to their zone car, Leonhardt was extremely verbally abusive and obviously intoxicated. He was

6

CITY 23

| Internal Affairs Unit |
|:---:|
| Investigative Report |

| File: IAU 2014-009 | Date: November 15, 2014 |
|---|---|
| Examined By: _R I\|f/L  C-l_ | Date: _12/2/1?_ |
| From: Carl Hartman, Sergeant | To: Monroe Goins, Lieutenant |
| Subject: Investigation of Alleged Police Misconduct | |

conveyed to the CPU where he requested medical attention. The officers then took Leonhardt to Saint Vincent Charity Hospital where he was treated and released by Dr. Haynesworth. He was then conveyed back to the CPU where he was booked and housed.

The only evidence of police misconduct was found in the statement from Christian Leonhardt where he indicated that Sgt. Strollo offered Caniglia the opportunity to go outside with Leonhardt to fight. This paired with Strollo's own statement in the recorded phone call stating "…I'm like, Pete you want me to go inside for a sec? He goes, 'yeah' so I go back inside and I hear scuffling…" Without the luxury of video surveillance, which was conveniently disabled that evening, there is no other way to corroborate the allegations against Strollo.

Leonhardt, on the other hand, has been repeatedly harassing both Strollo and Caniglia since the original incident. He is currently under investigation with the 3rd District Detective Bureau for allegations of intimidation. He was also the subject of an investigation with the CPD Intelligence Unit for threats made toward Sgt. Strollo after he was clearly advised by me and Leonhardt's attorney to stay clear of both Strollo and Caniglia. Due to his flagrant disregard of that admonition, an Order of Protection was issued against Leonhardt on December 10, 2013 ordering Leonhardt to refrain from coming into contact with Monica Delagarza and a copy was filed with the Crazy Horse.

Umberto Caniglia has also established cause for diminishing the believability of his entire statement. His statement that the off-duty (Janusczak) assisted with the arrest of Leonhardt and the attempted review of surveillance video were challenged by the statement by Janusczak who indicated in his statement that he had absolutely nothing to do with either. Caniglia's statement does not explain the numerous other injuries sustained by Leonhardt during the altercation as they are represented in the photographs provided by Leonhardt's attorney.

### Conclusion:

It is apparent that all Cleveland Police officers that were involved in this incident, except Sgt. Robert Strollo, acted properly according to all laws, policies, and procedures that they are bound by, both on and off duty. In regards to the statements made by Strollo during the recorded conversation between Strollo and Gilbert Mendez, it is my recommendation that this investigation be forwarded to the Municipal Prosecutor's Office for determination of criminal charges. Once that is completed, a recommendation for administrative charges will follow.

Respectfully,

Sgt. Carl Hartman #9043

7

CITY 24