UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                          :
CHRISTIAN LEONHARDT,                      :          Case No. 1:15-CV-2507
                                          :
              Plaintiff,                  :
                                          :
vs.                                       :          OPINION & ORDER
                                          :          [Resolving Docs. 25, 28, 32]
ROBERT STROLLO, et al.,                   :
                                          :
              Defendants.                 :
                                          :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Christian Leonhardt sues Cleveland Police Sergeant Robert Strollo and the City of Cleveland under 42 U.S.C. § 1983.[1]  His claims come from a November 16, 2013 incident at the Crazy Horse Men's Club in Cleveland, Ohio.[2]

Plaintiff originally alleged six causes of action.[3]  After Defendant filed a motion to dismiss, this Court dismissed three of the six claims.[4]  Defendants now ask for summary judgment on the remaining three claims: a Section 1983 claim against Sergeant Strollo for false arrest and false imprisonment; a Section 1983 claim against Sergeant Strollo for malicious prosecution; and a Section 1983 claim against the City of Cleveland for "customs and policies causing Constitutional violations."[5] Plaintiff opposes.[6]

For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Defendants' motion for summary judgment.

---

[1] Doc. 1-1.
[2] *Id.*
[3] *Id.*
[4] Doc. 16.
[5] Docs. 25, 32.
[6] Doc. 28.

Case No. 1:15-CV-2507
Gwin, J.

# I. Background

## A. *The Incident at the Crazy Horse Men's Club*

On November 16, 2013, Plaintiff Christen Leonhardt and Defendant Sergeant Robert Strollo arrived at the Crazy Horse Men's Club (the "Club") in Cleveland, Ohio.[7]  The parties dispute what happened next.

Monica Delagarza is the mother of Plaintiff Leonhardt's child and an employee at the Club.[8]  She reports that Leonhardt drunkenly confronted her on November 16, 2013, called her demeaning names, and threatened to kill her.[9]  In response, Ms. Delagarza says that she sought help from Defendant Sergeant Strollo.[10]  Strollo was at the Club on an unrelated police matter. Strollo and the Club's bouncer Umberto Caniglia removed Plaintiff Leonhardt from the Club.[11]

According to Defendant Strollo, he and Caniglia moved the Plaintiff outside the Club, but a "trash-talking" Plaintiff Leonhardt refused to leave premises.[12] Strollo claims he then went back inside the Club to summon an off-duty police officer for assistance.[13]  When Strollo returned outside, he says that bouncer Caniglia had pinned Plaintiff Leonhardt against the building because Leonhardt had bitten Caniglia's head.[14]  At this point, Defendant Strollo arrested Plaintiff Leonhardt for assault and domestic violence.[15]

Plaintiff Leonhardt tells a different story.  He says that he never threatened Monica Delagarza.[16]  Instead, Plaintiff Leonhardt claims that Defendant Strollo and bouncer Caniglia

---

[7] Doc. 28-1 ¶ 1; Doc. 25-2  ¶ 5.
[8] Doc. 25-2 at 4–5.
[9] *Id.*
[10] *Id.*
[11] *Id.* ¶ 7.
[12] *Id.*
[13] *Id.* ¶ 8.
[14] *Id.*
[15] *Id.* ¶ 10.
[16] Doc. 28-1 ¶ 4.

Case No. 1:15-CV-2507
Gwin, J.

took him outside of the Club.  Sergeant Strollo asked Caniglia if Caniglia would like time by himself with Leonhardt.[17]  The Plaintiff alleges that Caniglia accepted Strollo's offer, so Strollo left Caniglia to fight Leonhardt.[18]  Leonhardt says that Sergeant Strollo returned, but did not intervene, as Caniglia choked the Plaintiff unconscious.[19]  Following the fight, Strollo arrested the Plaintiff.[20]

### B. *Procedural History*

On November 17, 2013, the Plaintiff was charged in the Cleveland Municipal Court for disorderly conduct, domestic violence, and assault ("the Municipal Court Charges").[21]  On March 6, 2014, the Prosecutor dropped these charges.[22]

On April 28, 2015, the Plaintiff was charged in the Cuyahoga County Court of Common Pleas with three counts of menacing by stalking and one count of aggravated menacing ("the Common Pleas Charges").[23]  On July 30, 2015, the Prosecutor dropped these charges as well.[24]

On November 6, 2015, Leonhardt sued Sergeant Strollo, Officer Aaron Reese,[25] and the City of Cleveland in the Cuyahoga County Court of Common Pleas.[26]  On December 4, 2015, the Defendants removed the case to this Court.[27]  On April 14, 2016, this Court partially granted

---

[17] *Id.* ¶ 6–7; Doc 28 at 2.
[18] Doc 28 at 2.
[19] *Id.* at 2; Doc. 28-1 ¶ 8.
[20] Doc. 28-1 ¶ 8.
[21] Doc. 1-1 ¶ 15.
[22] *Id.* ¶ 17.
[23] *Id.* ¶ 18.
[24] *Id.* ¶ 20.
[25] This Court granted officer Reese's motion to dismiss all claims against him. Doc. 16. Officer Reese is no longer a party to this case.
[26] Doc. 1-1
[27] Doc. 1.

Case No. 1:15-CV-2507
Gwin, J.

the Defendants' motion to dismiss.[28]  The Defendants now move for summary judgment on the

remaining claims.[29]  Plaintiff opposes.[30]


## II. Motion for Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when 'there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law.'"[31]  The moving party must first demonstrate that there is an absence of a genuine dispute as

to a material fact entitling it to judgment.[32]  Once the moving party has done so, the non-moving

party must set forth specific facts in the record—not its allegations or denials in pleadings—

showing a triable issue.[33]  The existence of some doubt as to the material facts is insufficient to

defeat a motion for summary judgment.[34]  But the Court views the facts and all reasonable

inferences from those facts in favor of the non-moving party.[35]

When parties present competing versions of the facts on summary judgment, a district

court adopts the non-movant's version of the facts unless the record before the court directly

contradicts that version.[36] Otherwise, a district court does not weigh competing evidence or make

credibility determinations.[37]

---

[28] Doc. 16.

[29] Docs 25 and 32.

[30] Doc 28.

[31] *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 580 (6th Cir. 2014) (quoting  Fed. R. Civ. Pro. 56(a)).

[32] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[33] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[34] *Id.* at 586.

[35] *Killion*, 761 F.3d at 580 (internal citations omitted).

[36] *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

[37] *Koren v. Ohio Bell Tel. Co.*, 894 F. Supp. 2d 1032, 1037 (N.D. Ohio 2012) (citing *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 470 (6th Cir. 2012)).

-4-

Case No. 1:15-CV-2507
Gwin, J.

## III. Analysis

This Court grants in part and denies in part the Defendants' motion for summary judgment.  The opinion proceeds as follows.  First, this Court grants summary judgment to Defendant Strollo on the Plaintiff's false arrest claim.  Second, it denies summary judgment on the malicious prosecution for assault claim.  Third, it grants summary judgement to the Defendant on the malicious prosecution for domestic violence and disorderly conduct claims.  Finally, this Court grants summary judgment to Defendant City of Cleveland on the Plaintiff's claim of customs and policies causing Constitutional violations.

   A.  *Section 1983 Claims Against Defendant Strollo*

   1.  False Arrest and False Imprisonment Claims

Plaintiff Leonhardt says that Strollo violated his clearly established rights when Strollo arrested him outside of the Club.[38]  Defendant Strollo counters that Leonhardt's arrest was Constitutional because Strollo had probable cause to arrest Leonhardt.[39]

"A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff."[40]  To determine whether an arrest was supported by probable cause, the Court must decide "whether, at the time of the arrest, the facts and circumstances within [the arresting officer's] knowledge and of which [he] had reasonably

---

[38] Doc. 28 at 4–6, 13–14.
[39] Doc 25 at 4–5.
[40] *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (quoting *Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005) ).  The Plaintiff alleges both false arrest and false imprisonment, but makes arguments that focus on false arrest.  In a previous opinion, this Court examined the difference between false arrest and false imprisonment.  Doc. 16 at n.41.  This Court concluded that the distinction is moot because both boil down to the same question: whether Sergeant Strollo had probable cause to arrest the Plaintiff.  This Court concludes that he did.

Case No. 1:15-CV-2507
Gwin, J.

trustworthy information were sufficient to warrant a prudent person to conclude that an

individual either had committed or was committing an offense."[41]

In Ohio, an individual commits domestic violence if his threats cause the mother of his

child to believe he will cause her imminent physical harm.[42]  The Sixth Circuit has held that

threats reported by victims can give officers probable cause to make an arrest.[43]

Monica Delagarza gave a written witness statement the night of the incident.[44]  She

identified Leonhardt as her son's father.[45]  She wrote that Leonhardt arrived at the Club and

"called me a nasty bitch and he said [that] he would kill me."[46]  She continued, "I then ran as fast

as I could straight into the arms of the sergeant cop on duty to have him remove [Leonhardt]

from the premises."[47] Additional evidence in the record corroborates Ms. Delagarza's account,[48]

including statements by Leonhardt himself.[49]

Ms. Delagarza's request for help from Sergeant Strollo gave him probable cause to arrest

Leonhardt for domestic violence.  Ms. Delagarza says that she told Strollo that Leonhardt

threatened her and asked Strollo to remove Leonhardt from the club.  This conversation gave

Strollo sufficient evidence to believe that Leonhardt's threats had caused Delagarza to fear

imminent physical harm. Consequently, Strollo had probable cause to arrest Leonhardt for

domestic violence.  As a result, Leonhardt's false arrest claim loses.

---

[41] *United States v. Torres–Ramos*, 536 F.3d 542, 555 (6th Cir. 2008) (quoting *Beck v. Ohio*, 379 U.S. 89, 91, (1964)).
[42] O.R.C. § 2919.25
[43] *See, e.g.*, *Ghaith v. Rauschenberger*, 493 F. App'x 731, 737 (6th Cir. 2012) ("[t]he credible reports of [witnesses] suggesting that [defendant] threatened to kill them if [defendant's son] did not return to Jordan established probable cause to arrest [defendant] for extortion.").
[44] Doc. 25-2 at 4–5.
[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] *See e.g.*, 28-3 at 21–22.
[49] *Id.* at 16.  In a March 5, 2014 interview with the Cleveland Police Internal Affairs Unit, Leonhardt admitted to directing vile language at Ms. Delagarza when he saw her the night of the incident.

Case No. 1:15-CV-2507
Gwin, J.

Moreover, qualified immunity shields Sergeant Strollo from liability for false arrest.

Under the doctrine of qualified immunity, police officers "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or Constitutional rights of which a reasonable person would have known."[50]  Qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."[51]

To determine whether qualified immunity applies, the Court analyzes: "(1) whether the allegations give rise to a Constitutional violation; and (2) whether the right was clearly established at the time of the incident."[52]  To be "clearly established," the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."[53]  The Court must also consider "whether the official's action was objectively unreasonable under the circumstances."[54]

Leonhardt says that he never threatened Ms. Delagarza.[55]  Even if it turned out that Ms. Delagarza fabricated her story about Leonhardt threatening her, Strollo acted in an objectively reasonable way when he arrested Leonhardt for domestic violence based on Ms. Delagarza's information.  In doing so, Strollo did not violate clearly established law or the Plaintiff's Constitutional rights.[56]  Given these facts, qualified immunity also precludes finding Sergeant Strollo liable for false arrest.

---

[50] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).
[51] *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal quotation marks and citation omitted).
[52] *Coley v. Lucas Cnty., Ohio*, 799 F.3d 530, 537 (6th Cir. 2015)  (quoting *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013)).
[53] *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).
[54] *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008).
[55] Doc. 28-1 at ¶ 4.  Recall, however, Leonhardt did tell investigators that he called Delagarza vile names. 28-3 at 16.
[56] An arrest supported by probable cause does not violate clearly established law or the Constitution.

Case No. 1:15-CV-2507
Gwin, J.

Therefore, this Court grants the Defendant's motion for summary judgment on Leonhardt's claim for false arrest and false imprisonment.


## 2.   Malicious Prosecution Claims

Plaintiff Leonhardt says that Sergeant Strollo violated his Constitutional rights when Cleveland prosecuted Leonhardt for disorderly conduct, domestic violence, and assault.[57]  Strollo counters that Cleveland had probable cause to prosecute on all three charges.[58]

To succeed on a § 1983 claim for malicious prosecution, Leonhardt must prove the following:  (1) that a criminal prosecution was initiated against him and that the Strollo made, influenced, or participated in the decision to prosecute; (2) that there was a lack of probable cause for the criminal prosecution; (3) that as a consequence of the proceeding, Leonhardt suffered a deprivation of liberty apart from the initial seizure; and (4) that the criminal proceeding was resolved in Leonhardt's favor.[59]  Neither a lack of malice, nor the intervention of a prosecutor, works to absolve an individual officer of liability.[60]


### i.      Malicious Prosecution for Assault

There are still disputed issues of material fact regarding the malicious prosecution of Leonhard for assault.

---

[57] In his complaint and motion opposing summary judgment, the Plaintiff only discusses the Municipal Court Charges in connection with malicious prosecution.  Doc. 1-1 ¶ 46–48; Doc 28 at 8–10.  Accordingly, this Court only addresses the Municipal Court Charges, not the Common Pleas Charges.

[58] Doc 25-1 at 6.

[59] *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010).

[60] *Id.* at 309.

Case No. 1:15-CV-2507
Gwin, J.

First, Cleveland charged Leonhardt with criminal assault following his arrest outside the Club.[61]  Strollo may have influenced the decision to prosecute. For instance, the Cleveland Police's Commander of Bureau Integrity wrote that "Leonhardt would have been prosecuted on Strollo's report." Because we know that other evidence caused the prosecution to be dismissed, we assume Strollo's report influenced the prosecution.[62]

Second, material questions remain as to whether Strollo had probable cause to arrest Leonhardt for assault.  Cleveland Police recorded a phone call where Strollo recounted the night in question to a friend.  On the call Strollo says:

> [Caniglia] trains MMA, he knows how to work his hands and feet and his body. So [Leonhardt] kept trying to run his mouth . . . [so I asked Caniglia], you want me to go inside for a sec? He goes yeah. So I go back inside and I hear scuffling and I open the door, and [Caniglia's] got him pinned against the wall, [Leonhardt] bites [Caniglia] in the head . . . so [Caniglia] . . . puts him in a sleeper hold and knocks him out.  So we do the report for the assault on [Caniglia].[63]

The Defendant's statements suggest he permitted Caniglia to fight Leonhardt when he knew Caniglia trained in Mixed Martial Arts.  This raises material questions as to whether there was probable cause to charge Leonhardt with assault.

Third, Leonhardt alleged that he suffered a deprivation of liberty apart from his initial arrest.  Leonhardt reports he was "held in the City of Cleveland jail for two days before he was permitted to post bond."[64]  This incarceration indicates an alleged deprivation of liberty beyond his initial arrest.[65]

---

[61] O.R.C. § 2903.13(A) "No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn."
[62] Doc. 28-3 at 3.
[63] Doc. 28-2 at 1.
[64] Doc. 28-1 ¶ 11.
[65] *See, e.g.,* Billock v. Kuivila, No. 4:11-CV-02394, 2013 WL 591988, at *5 (N.D. Ohio Feb. 14, 2013 ("Recent cases from this district and others within this circuit have ruled that a detention must extend beyond an initial arrest

Case No. 1:15-CV-2507
Gwin, J.

Finally, the criminal proceeding was resolved in Leonhardt's favor because the prosecutor dropped the assault charge on March 6, 2014.[66]

Issues of material fact remain in dispute.  Therefore, this Court denies the Defendant's motion for summary judgment on Leonhardt's § 1983 claim for malicious prosecution for assault.

                        ii.        Malicious Prosecution for Disorderly Conduct and Domestic Violence

As discussed in Section A.1, Leonhardt threatened Ms. Delagarza.  This threat gave Sergeant Strollo probable cause to arrest and prosecute Leonhardt for domestic violence[67] and disorderly conduct.[68]  Because Strollo had probable cause to arrest Leonhardt for these changes, Leonhardt cannot satisfy the second prong of the § 1983 malicious prosecution test. Consequently, his claims lose.

Therefore, this Court grants the Defendant Strollo's motion for summary judgment on Leonhardt's claim for malicious prosecution for disorderly conduct and domestic violence.

    B. *Section 1983 claim against the City of Cleveland for customs and policies causing Constitutional violations*

Leonhardt also brings a § 1983 claim against the City of Cleveland ("Cleveland"). He says that customs and policies implemented by Cleveland's law enforcement violate the Fourth

---

to constitute a sufficient 'deprivation of liberty' to support a malicious prosecution claim under § 1983.") (citations omitted).
[66] Doc. 1-1 at ¶ 17.
[67] O.R.C. § 2919.25
[68] O.R.C. § 2917.11 A.  "No person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following: (1) Engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior."

-10-

Case No. 1:15-CV-2507
Gwin, J.

and Fourteenth Amendments.[69]  Cleveland responds that Leonhardt failed to provide any

evidence of such a policy or custom.[70]

    A plaintiff raising a § 1983 municipal liability claim must demonstrate that the alleged

violation occurred because of a municipal policy or custom.[71]  A plaintiff can make a showing of

an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal

official policy or legislative enactment; (2) that an official with final decision making authority

ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4)

the existence of a custom of tolerance or acquiescence of federal rights violations.[72]

    A municipality may not be held liable under § 1983 simply upon the theory of *respondeat

superior*.[73]  Instead, the governmental policy or custom, even a policy of inaction, must have

been the moving force causing the alleged violation.[74]

    Leonhardt alleges that Cleveland should be liable for two customs that violate the Fourth

and Fourteenth Amendments.  First, Leonhardt says that Cleveland fails to train its officers

because Strollo violated the Plaintiff's Constitutional rights by arresting and prosecuting him.[75]

Second, Leonhardt argues that Cleveland's failure to discipline Sergeant Strollo shows a custom

of tolerating rights violations.[76]  These arguments lose.

---

[69] Doc. 1-1 ¶ 60–64.

[70] Doc. 25-1 at 7–9.

[71] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

[72] *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

[73] *Bennett v. City of Eastpointe*, 410 F.3d 810, 818 (6th Cir. 2005).

[74] *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403–04 (1997); *Monell*, 436 U.S. at 694 ("It is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.")

[75] Doc. 28 at 12-13.

[76] *Id.* at 10-12.

-11-

Case No. 1:15-CV-2507
Gwin, J.

Both of Leonhardt's arguments lose for the same reason: he fails to provide evidence beyond his own individual experience that shows Cleveland has a policy or custom of violating Constitutional rights.[77]

Plaintiff Leonhardt says that "based on Defendant Strollo's unlawful detention, arrest, and prosecution, Defendant Strollo was clearly not properly trained on when an arrest can be performed and the requirement of probable cause."[78]  This conclusory statement is inadequate to survive summary judgment. Municipal liability is not *respondeat superior*; municipalities are accountable for customs—not rogue officers—that violate Constitutional rights.  To demonstrate that any Cleveland failure to train caused a violation of Plaintiff's rights, he must show more than mere allegations.

Leonhardt also argues that Cleveland tolerates Constitutional rights violations because "Strollo has not been prosecuted or disciplined by Cleveland."[79]  The record reveals that the City conducted an extensive investigation into Sergeant Strollo's conduct.[80]  The prosecutor declined to bring criminal charges against Strollo.[81]  Leonhardt cannot support a case for municipal liability based only on the decision not to prosecute Sergeant Strollo.  Leonhardt fails to provide additional evidence that suggests Cleveland has a custom of tolerating Constitutional violations.  Consequently, his argument loses.

---

[77] The Plaintiff referenced the Department of Justice's investigation of the Cleveland Division of Police in its responses to the Defendant Cleveland's interrogatories.  Doc. 25-4 at 6.  However, the Plaintiff did not mention this report in its briefing to this Court.  This Court observes that merely referencing the DOJ's report does not transform every alleged Constitutional violation by a Cleveland police officer into sufficient evidence for municipal liability.
[78] Doc. 28 at 13.
[79] *Id.* at 12.
[80] Doc. 28-3.
[81] *Id.* at 2.

Case No. 1:15-CV-2507
Gwin, J.

Therefore, this Court grants Defendant City of Cleveland's motion for summary judgment on the Plaintiff's § 1983 claim for customs and policies causing Constitutional violations.


**IV. Conclusion**

The Court **GRANTS IN PART** and **DENIES IN PART** the Defendants' motion for summary judgment in accordance with this opinion.

IT IS SO ORDERED.


Dated:  September 8, 2016                    *s/          James S. Gwin*
                                            JAMES S. GWIN
                                            UNITED STATES DISTRICT JUDGE